UNITED STATES DISTRICT COURT
DISTRICT OF PUERTO RICO

FUNERARIA DEL NOROESTE INCORPORATED, et al.,

    Plaintiffs,

    v.

FUNERARIA SAN ANTONIO, et al.,

    Defendants.

Civil No. 11-1595 (JAF)

## **OPINION AND ORDER**

Plaintiffs sue alleging violations of their rights under the U.S. Constitution via 42 U.S.C. § 1983; they also raise causes of action under 42 U.S.C. § 1985; the Sherman Act, 15 U.S.C. §§ 1–7; and the Federal Wiretapping Act, 18 U.S.C.A. § 2511. (Docket No. 53.) Plaintiffs also raise supplemental claims under the Commonwealth unfair competition statute, 10 L.P.R.A. § 258, and general tort statute, 31 L.P.R.A. § 5141 ("Article 1802"). (Id.) Several codefendant police officers (hereinafter "Movants")[1] move for dismissal under Federal Rule of Civil Procedure 12(b)(4) and (6). (Docket No. 25.) Plaintiffs oppose. (Docket No. 40.) Additionally, in a separate motion, codefendant María Conte ("Conte") also moves for dismissal under Rule 12(b)(6). (Docket No. 27.) Plaintiffs oppose. (Docket No. 41.) Movants and Conte respond jointly to Plaintiffs' opposition. (Docket No. 51.)

---

[1] Movants include codefendants "Luis A. Muñoz Martínez, Exmildo Echevarria Delgado, Maribel Riollanos Ramos, Isabel Valle Tavárez, José E. Mercado Santiago, Melissa Escalera Acosta, Wilson Sánchez Juarbe, Melissa Perez, and Israel Colón Mercado in their personal capacities," as well as codefendant José Antonio Torres. (Docket Nos. 25; 35.) Movants include every police officer named as a codefendant in the complaint, with the exception of Reinaldo Cortez-Salas. Also not included among Movants are codefendants José Figueroa-Sancha, former Superintendent of the Puerto Rico Police Department; the Municipality of Isabela; the mayor of Isabela, Carlos Delgado-Altieri; or the Funeraria San Antonio and its owners, Luis Iván Rosario, his spouse Aida Vanessa López, and their conjugal partnership.

# I.

## **Factual Allegations**

We draw upon the amended complaint, (Docket No. 53), to create the following summary of the facts alleged. Co-plaintiff, Funeraria del Noroeste, Incorporated, ("Noroeste") provides funeral services to all northwest Puerto Rico residents. (Docket No. 53 at 6.) Noroeste's sole stockholder, Germán Ramos-Santiago ("Ramos"), resides in Isabela, Puerto Rico. Codefendant Funeraria San Antonio ("San Antonio") has its principal place of business in Isabela, Puerto Rico, and is owned by codefendant Luis Iván Rosario ("Rosario"). (Id. at 4.) Codefendant Carlos Delgado-Altieri is the Mayor of the municipality of Isabela, which is also named as a codefendant. (Id. at 5.) Movants are police officers in the Puerto Rico Police Department ("PRPD"). (Id. at 5–6.) Conte serves as the Executive Director of the Forensic Sciences Institute ("FSI"), a Commonwealth agency providing forensic pathology services in cases of violent deaths or deaths under unknown circumstances. (Id. at 7.)

The FSI contracts services with morgues or persons for the transfer of corpses from around the island to its facilities for autopsies. Plaintiffs allege that Rosario (through San Antonio) has such "a contract with the FSI, which has been renewed for many years." (Id. at 7.) This contract allegedly names San Antonio as the FSI transport agent in the event of a death of an unknown person, but provides that in other cases, the family members of the deceased have the right to pick the transport agent or funeral home of their choice. (Id.) Plaintiffs allege that Rosario had a sign posted in the police precinct station indicating that San Antonio was the funeral home in charge of transporting bodies to the FSI. (Id. at 9.)

Civil No. 11-1595 (JA F)                                                                                         -3-

Plaintiffs allege that San Antonio "has and uses a scanner at its premises with which they can intercept the calls received by 911" and the calls received at the local Emergency Management office. (Id.) Rosario allegedly tampers with radio communicators and listens in to "the police frequencies and knows of all the decease[d]" persons in the area, and he follows up by calling the police to gather information so that he can show up unsolicited at the scene of death. (Id. at 8.) Rosario also allegedly has a contract to sell radio communicators and scanners to the PRPD.[2] (Id.) Additionally, employees of the municipal hospital allegedly call San Antonio to alert Rosario of deaths. (Id. at 13, 15.)

Plaintiffs further allege that Movants, police officers in the Isabela area, alert San Antonio to calls received at the police station, 911, and Emergency Management, so that San Antonio can appear first at the scene of death. (Id. at 9.) Furthermore, Plaintiffs allege various incidents in which several different Movants, in their capacity as police officers, arrived at death scenes and insisted upon calling San Antonio, informing citizens that the bodies had to be transported by San Antonio. (Id. at 10–12.) For example, codefendant Pérez allegedly called San Antonio for transportation for a death at an elderly home without consulting the family as to which funeral service they wanted, and informed them that San Antonio was the only authorized transport agent. (Id. at 10–11.) Plaintiffs allege several other such examples of police officers coercing or persuading citizens into using San Antonio's services, even if the family already had a contract with Noroeste. (Id. at 10–13.)

---

[2] Plaintiffs also allege several other transgressions by Rosario and San Antonio, such as violating the health code by recycling caskets without changing the lining, holding bodies at San Antonio instead of immediately transporting them to the FSI as per the contract, and "lending" burial plots (sold by the Municipality to San Antonio) to families who do not yet have a plot. Additionally, they allege that the police officers call Rosario "The Godfather," citing his illicit influence in local politics and his ability to procure promotions for police officers. (Docket No. 53 at 6–8; 14.) These allegations, albeit unsavory, do not prove relevant for present purposes.

Civil No. 11-1595 (JA F) -4-

Furthermore, Plaintiffs allege that several police officers worked for San Antonio, such as codefendant Pérez, who allegedly moonlights as a funeral vehicle driver for San Antonio, as well as several unidentified officers who drive "private motorcycles escorting San Antonio" funeral processions. (Id. at 14–15.)

Plaintiffs allegedly met on multiple occasions with the Mayor, codefendant Carlos Delgado, to discuss their dissatisfaction with the favoritism shown by PRPD and municipal employees, but nothing changed. (Id. at 14.) In one of the meetings with the Mayor, he allegedly informed Plaintiffs that, from then on, "municipal officers" would only provide motorcycle escorts to funeral processions from "the funeral business of the urban side;" Plaintiffs explain that Noroeste is "the only funeral business outside the urban range." (Id.) At a later meeting, Plaintiffs allegedly "requested permission to buy their own motorcycles for escorting their funeral" processions, but the Mayor denied permission, citing potential interference with traffic. (Id.) Allegedly, "[m]onths later San Antonio appeared escorting [their] funeral services with private motorcycles." (Id.)

In addition to the fruitless meetings with the Mayor, Plaintiffs also allege that they wrote Conte a letter of complaint regarding San Antonio's practices, which went unanswered. (Id. at 9.) Plaintiffs also allegedly lodged several other complaints, written and oral, with various local and Commonwealth entities, including the PRPD, the Commonwealth Ombudsman ("Procurador del Ciudadano"), the FSI's attorney, and the hospital administration. These complaints also failed to change the situation. (Id. at 11–15.) Plaintiffs filed the original complaint in the present case on June 21, 2011. (Docket No. 1.)

## II.

## **Standard for Motion to Dismiss Under 12(b)(4) and 12(b)(6)**

### **A.    Rule 12(b)(4)**

Under Federal Rules of Civil Procedure 12(b)(4) and (b)(5), a defendant may move for dismissal based on insufficient process and service of process. "Before . . . a court may exercise personal jurisdiction over a defendant, the procedural requirement of service of summons must be satisfied." Murphy Bros., Inc. v. Michetti Pipe Stringing, Inc., 526 U.S. 344, 350 (1999) (internal quotation marks omitted). Once a defendant challenges service of process, the burden shifts to the plaintiff to prove proper service. Rivera-López v. Municipality of Dorado, 979 F.2d 885, 887 (1st Cir. 1992).

### **B.    Rule 12(b)(6)**

A defendant may move to dismiss an action, based solely on the complaint, for the plaintiff's "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). In assessing such a motion, we "accept[] all well-pleaded facts as true, and we draw all reasonable inferences in favor of the [plaintiff]." Wash. Legal Found. v. Mass. Bar Found., 993 F.2d 962, 971 (1st Cir. 1993).

"[A]n adequate complaint must provide fair notice to the defendants and state a facially plausible legal claim." Ocasio-Hernández v. Fortuño-Burset, 640 F.3d 1, 12 (1st Cir. 2011). In considering a complaint's adequacy, we disregard "statements in the complaint that merely offer legal conclusions couched as fact or threadbare recitals of the elements of a cause of action." Id. (internal quotation marks omitted). We then take as true what remains, "[n]onconclusory factual allegations . . . even if seemingly incredible." Id.

Civil No. 11-1595 (JAF) -6-

On the basis of those properly-pled facts, we assess the "reasonableness of the inference of liability that the plaintiff is asking the court to draw." Id. at 13.

### III.

### Analysis

Plaintiffs acknowledge that sovereign immunity bars claims for money damages against all codefendants who are government employees in their official capacities. (Docket No. 40 at 28.) Movants and Conte argue that: 1) qualified immunity shields them from suit; 2) the statute of limitations has run on Plaintiffs' claims; 3) Plaintiffs have failed to state a claim under § 1985, the Sherman Act, or § 2511; and 4) the Commonwealth claims should be dismissed. (Docket Nos. 25; 27.) In addition, Movants (without Conte) argue for dismissal based on improper service under Rule 12(b)(4). (Docket No. 25.) We discuss each argument in turn below,[3] and we dismiss all claims.

**A.    Proper Service under 12(b)(4)**

Movants argue that they were served with the original complaint, and not the amended complaint and that, therefore, we should dismiss all claims.[4] We disagree. Federal Rule of Civil Procedure 15(a)(2) permits parties to amend pleadings with leave of the court, which should be given freely "when justice so requires." Fed. R. Civ. P. 15(a)(2); see also Krupski v. Costa Crociere, 130 S. Ct. 2485, 2497 (2010) (explaining Rule 15 in great detail).

---

[3] We do not reach Movants' statute of limitations or supervisory liability arguments because we base our decision on other grounds.

[4] After the filing of this motion to dismiss, Plaintiffs amended their complaint for the second time. No new parties or substantive claims were added in their first or second complaint. (Docket No. 53.)

Civil No. 11-1595 (JAF) -7-

Here, Plaintiffs did not allege any new substantive claims or add any new defendants.[5] Their second "amended complaint did not in fact contain a new claim for relief, and therefore did not require service under Rule 5(a)(2)." Blair v. City of Worcester, 522 F.3d 105, 109 (1st Cir. 2008). Thus, Movants' argument fails; "because the amended complaints did not urge any new, substantive claims against any of the defendants, additional service of process was not required." Id. at 110 (citing Fed. R. Civ. P. 5(a)(2)).

**B.    Qualified Immunity**

Movants and Conte[6] argue that qualified immunity applies in this case. (Docket No. 25.) We agree. State or Commonwealth officers or employees sued in their personal capacity may raise qualified immunity as an affirmative defense against damages liability. Harlow v. Fitzgerald, 457 U.S. 800, 808 (1982). In fact, qualified immunity offers "defendant public officials an immunity from suit and not a mere defense to liability . . . . For this reason, immunity is to be resolved at the earliest possible stage in litigation." Maldonado v. Fontanes, 568 F.3d 263, 268 (1st Cir. 2009) (citations omitted). The qualified immunity test has two prongs: "A court must decide: (1) whether the facts alleged or shown by the plaintiff make out a violation of a constitutional right; and (2) if so, whether the right was 'clearly established' at the time of the defendant's alleged violation." Id. at 268–69 (quoting Pearson v. Callahan, 555 U.S. 223, 234 (2009)). Defendants bear the burden of proof for establishing the affirmative defense. DiMarco-Zappa v. Cabanillas, 238 F.3d 25,

---

[5] The procedural history of this case differs from "when a plaintiff seeks to serve an amended complaint that alleges new claims on a defendant who has not appeared, the combination of Rules 4 and 5 require a summons to be served together with a copy of the amended complaint." Anunciation v. W. Capital Fin. Servs. Corp., 97 F.3d 1458 (9th Cir. 1996) (citing Fluor Eng'rs. and Constr., Inc. v. S. Pac. Transp. Co., 753 F.2d 444, 449 n.7 (5th Cir. 1985)).

[6] Conte, who shares the same counsel with Movants, makes all the same arguments as Movants, with the exception of the improper service argument. (Docket Nos. 40; 41.)

Civil No. 11-1595 (JAF) -8-

35 (1st Cir. 2001) (citing Harlow, 457 U.S. at 815). For the reasons laid out below, we determine that the complaint fails the first prong and, thus, qualified immunity applies.

Plaintiffs allege violations of the Fourth Amendment, as well as the Fourteenth Amendment. First, Movants argue that Plaintiffs have failed to allege a Fourth Amendment violation, and we agree. Plaintiffs make one brief mention of the Fourth Amendment in passing in the complaint, and no mention of it whatsoever in their opposition brief. Their allegation that San Antonio, a private party, illicitly intercepted police and 911 transmissions is the closest Plaintiffs come to alleging a Fourth Amendment violation, but it does not succeed. In general, "Fourth Amendment rights are personal rights which, like some other constitutional rights, may not be vicariously asserted." Alderman v. United States, 394 U.S. 165, 174 (1969). Plaintiffs do not allege that they were the victims of an unlawful search and seizure or invasion of privacy. Id. at 173. Here, Plaintiffs "had no possessory interest or reasonable expectation of privacy concerning" the intercepted communications, which were within the police radio system, 911, or the medical emergency center. United States v. Ferrara, 771 F. Supp. 1266, 1292 (D. Mass. 1991) (citing United States v. Karo, 468 U.S. 705, 712 (1984)). Accepting the allegations as true, none of the facts alleged constitute a violation of Plaintiffs' Fourth Amendment rights.

Next, we determine whether Plaintiffs have alleged a violation of their Fourteenth Amendment rights. Plaintiffs urge several alternative grounds for such a violation, including procedural due process, substantive due process, and equal protection arguments. To state a procedural due process claim under the Fourteenth Amendment at this stage,

Plaintiffs must first identify a protected liberty or property interest.[7] Bd. of Regents v. Roth, 408 U.S. 564, 569–70 (1972). "In order to establish a constitutionally protected property interest, the plaintiffs must identify a 'legitimate claim of entitlement' to the property in question—a claim of entitlement created and defined by 'existing rules or understandings that stem from an independent source such as state law.'" Centro Medico del Turabo, Inc. v. Feliciano de Melecio, 406 F.3d 1, 8 n.4 (1st Cir. 2005) (quoting id. at 577). Such a claim of entitlement must consist of more than "an abstract need or desire for it. [And Plaintiffs] must have more than a unilateral expectation of it." Roth, 408 U.S. at 577. After examining the complaint, we find ourselves "unable to find any clear statement of the precise property interest that the plaintiffs contend is at stake." Redondo-Borges v. U.S. Dept. of Hous. & Urban Dev., 421 F.3d 1, 8 (1st Cir. 2005). But, based on the pleadings, we find that Plaintiffs identify the following as their protected property rights: The right to fair competition; to receive the expected income from existing contracts; and to contract free of interference.[8]

We find that none of the above interests constitutes a "legitimate claim of entitlement" as required under the Supreme Court's procedural due process jurisprudence. Roth, 408 U.S. at 569. The First Circuit has "held with a regularity bordering on the echolalic that a simple breach of contract does not amount to an unconstitutional deprivation

---

[7] "To invoke a liberty interest, the plaintiffs would have to identify a right or status previously recognized by state law that was distinctly altered or extinguished by state action. They have made no effort to convince us that any such right or status is implicated here, and we can think of none." Centro Medico del Turabo, Inc. v. Feliciano de Melecio, 406 F.3d 1, 8 n.4 (1st Cir. 2005) (internal quotation marks and citations omitted).

[8] Plaintiffs allege that Defendants "have violated all the processes that exist by interfering with the funeral business," citing the referral of all 911 and medical emergency calls to codefendant Funeraria San Antonio as violations of due process. (Docket No. 40.) They also cite the interference with existing contracts and the impediments to free competition as violations. (Docket Nos. 40; 53.)

of property." Redondo-Borges, 421 F.3d at 10 (citing Lee v. Life Ins. Co. of N. Am., 23 F.3d 14, 20 n.11 (1st Cir. 1994)). Moreover, Plaintiffs have failed to allege that they had a "legally cognizable right" under Commonwealth law to do business without the interference of the government or private parties. Centro Medico del Turabo, 406 F.3d at 8. The only action by the municipal government alleged that could constitute a possible denial or deprivation was the Mayor's alleged rejection of Plaintiffs' alleged request for "permission to buy their own motorcycles." (Docket No. 53 at 14.) Yet, Plaintiff points to no municipal regulation or policy mandating equal referrals or grants of motorcycle escorts for all funeral homes. To the contrary, Plaintiffs actually identify a contract between the Forensic Sciences Institute ("FSI") and San Antonio, naming San Antonio as the transport agent in the event of the death of an unknown person.[9] (Docket No. 53 at 7.) Plaintiffs' desire to be granted equal referrals is understandable, but that desire does not create a property right. As the Supreme Court has explained: "If an official has unconstrained discretion to deny a benefit, a prospective recipient of that benefit can establish no more than a unilateral expectation to it." Roth, 408 U.S. at 577 (internal quotation marks and citations omitted). The Puerto Rico Supreme Court has also reiterated that a unilateral expectation does not create a property interest. Departamento de Recursos Naturales v. Correa, 118 D.P.R. 689, 699 (P.R. 1987) (citing Bollow v. Fed. Reserve Bank, 650 F.2d 1093 (9th Cir. 1981)). Plaintiffs' alleged property interests fail as too "'meager, transitory, or uncertain.'" Tropical Air Flying Servs. v. Carmen Feliciano de Melecio, 158 F. Supp. 2d 177, 189–90 (D.P.R. 2001) (quoting Barrington Cove Ltd. v. R.I. Hous. and Mortg. Fin. Corp., 246 F.3d 1, 5 (1st Cir. 2001)); see also Med Corp., v. Lima, 296 F.3d 404, 410 (6th Cir. 2002) (finding

---

[9] Plaintiffs allege that a notice was posted at the police station "that indicated that San Antonio was the funeral [sic] in charge of transporting the corpses to the FSI." (Docket No. 53 at 9.)

Civil No. 11-1595 (JAF)                                                                                          -11-

plaintiff ambulance company had no protected property interest in continued referral of 911 calls when plaintiff failed to "point to some policy, law, or mutually explicit understanding that both confers the benefit and limits the discretion of the City to rescind the benefit").

Next, we examine Plaintiffs' allegations under the rubric of substantive due process. Substantive due process claims may be pled under either one of two theories. Under the first, a plaintiff may "demonstrate a deprivation of an identified liberty or property interest protected by the Fourteenth Amendment. Under the second, a plaintiff is not required to prove the deprivation of a specific liberty or property interest, but, rather, he must prove that the state's conduct 'shocks the conscience.'" Brown v. Hot, Sexy & Safer Prods., Inc., 68 F.3d 525, 531 (1st Cir. 1995).

As discussed above, Plaintiffs have identified no protected liberty or property interest, and we now find that the government's conduct does not rise to the level of conscience-shocking. The First Circuit has "insisted that before a constitutional infringement occurs, state action must in and of itself be egregiously unacceptable, outrageous, or conscience-shocking.'" Cruz-Erazo v. Rivera-Montanez, 212 F.3d 617, 622 (1st Cir. 2000) (quoting Amsden v. Moran, 904 F.2d 748, 754 (1st Cir. 1990)). The cases in which governmental conduct meets this test "have often involved state action that was highly physically intrusive." Id. (collecting cases). Additionally, the "conscience-shocking concept points clearly away from liability, or clearly toward it, only at the ends of the tort law's culpability spectrum: Liability for negligently inflicted harm is categorically beneath the constitutional due process threshold." Cnty. of Sacramento v. Lewis, 523 U.S. 833, 834 (1998). On the other hand, "conduct deliberately intended to injure in some way

Civil No. 11-1595 (JAF) -12-

unjustifiable by any government interest is the sort of official action most likely to rise to the conscience-shocking level." Id.

In this case, Plaintiffs allege that the municipal government intentionally favored San Antonio by advising it of 911 emergency calls, persuading citizens to use San Antonio for transport of deceased relatives despite preexisting contracts with Plaintiffs, and posting a notice at the police station naming San Antonio as the transport agent for the FSI. Additionally, Plaintiffs allege that the municipal police officers worked for San Antonio and drove "private motorcycles escorting San Antonio" funerals. (Docket No. 53.) Moreover, Plaintiffs do not allege that Movants—police officers and agents—acted with the intent to injure. Here, the alleged actions of the local government in favoring San Antonio strike us as rather unsavory, but do not shock the conscience. The First Circuit has "repeatedly held that 'the substantive due process doctrine may not, in the ordinary course, be invoked to challenge discretionary permitting or licensing determinations of state or local decisionmakers, whether those decisions are right or wrong.'" Clark v. Boscher, 514 F.3d 107, 113 (1st Cir. 2008) (quoting Mongeau v. City of Marlborough, 492 F.3d 14, 17 (1st Cir. 2007)). The First Circuit has "deemed more offensive conduct not to be conscience-shocking." McConkie v. Nichols, 446 F.3d 258, 261-62 (1st Cir. 2006) (finding police detective's lies to suspect that his statements would remain confidential during interrogation did not shock conscience); see also Cruz-Erazo, 212 F.3d at 623 (finding no conscience-shocking conduct where police officers deliberately lied in official documents and perjured themselves in court proceedings); Souza v. Pina, 53 F.3d 423 (1st Cir. 1995) (finding no due process violation when murder suspect committed suicide after prosecutors encouraged media to link him to series of murders).

Civil No. 11-1595 (JAF)                                                                                                -13-

Finally, we turn to Plaintiffs' argument that they were "impermissibly singled out for unfavorable treatment, in violation of the Equal Protection Clause" as a class of one. (Docket No. 40.) "Such a claim is cognizable when—and only when—a 'plaintiff alleges that she has been intentionally treated differently from others similarly situated and that there is no rational basis for the difference in treatment.'" Cordi-Allen v. Conlon, 494 F.3d 245, 250 (1st Cir. 2007) (quoting Vill. of Willowbrook v. Olech, 528 U.S. 562, 564 (2000) (per curiam)).  Moreover, equal protection plaintiffs must allege facts indicating that the selective treatment sprung from "impermissible considerations such as race, religion, intent to inhibit or punish the exercise of constitutional rights, or malicious or bad faith intent to injure a person." Barrington Cove, 246 F.3d at 7 (quoting Rubinovitz v. Rogato, 60 F.3d 906, 909–10 (1st Cir. 1995)).

The standard for determining whether individuals or entities are "similarly situated" for equal protection purposes asks, somewhat tautologically, whether a prudent person, examining the incidents alleged "would think them roughly equivalent and the protagonists similarly situated . . . . Exact correlation is neither likely nor necessary, but the cases must be fair congeners. In other words, apples should be compared to apples." Id. at 8 (quoting Dartmouth Review v. Dartmouth Coll., 889 F.2d 13, 19 (1st Cir. 1989) (internal quotation marks omitted)). At "the present stage in the Rule 12(b)(6) analysis . . . it [is] necessary that [Plaintiffs] allege these correlations with reasonable particularity." Id.

Here, Plaintiffs have identified and related specific instances of different treatment, but we find that they have not alleged facts sufficient to establish that the Noroeste and San Antonio funeral homes were "situated similarly in all relevant aspects." Buchanan v. Maine, 469 F.3d 158, 178 (1st Cir. 2006) (emphasis in original) (internal quotation marks

and citations omitted). The complaint does not allege that the two funeral homes were similar in size, capabilities, facilities or even geographic location. In fact, the complaint included allegations which arguably intimated that Noroeste was <u>not</u> similarly situated to San Antonio in two important respects. <u>Barrington Cove</u>, 246 F.3d at 8. The complaint alleges that San Antonio was located in Isabela, but states that Noroeste is "the only funeral business outside the urban range" of Isabela, and that it provides "funeral services to all the northwest Puerto Rico residents." (Docket No. 53 at 6, 14.) Moreover, the complaint does not allege that Noroeste had or was promised a contract with the FSI to transport unknown "medical-legal bodies to its facilities for autopsy purposes" or with any other government entity, whereas Plaintiffs allege that San Antonio has such a contract, "which has been renewed for many years." (<u>Id.</u> at 7.)

The variation in geographic location and the longstanding FSI contracts are not negligible differences. The requirement of a "strict showing of comparability," which the Plaintiffs have failed, serves as more than just a limiting principle in this case. <u>Rectrix Aerodrome Ctr. v. Barnstable Mun. Airport Comm'n</u>, 610 F.3d 8, 16 (1st Cir. 2010). "In our view, it would have been entirely reasonable for [the municipality] to consider <u>each</u> of these matters an adequate basis" for differential treatment. <u>Barrington Cove</u>, 246 F.3d at 9. Specifically, the allegation that the municipality gave San Antonio the special treatment of providing motorcade escorts for funerals because of its location within the urban area, and cited traffic control as the reason for prohibiting Noroeste from having its own motorcade escorts does not insinuate some sort of invidious discrimination. (Docket No. 53 at 14.) Moreover, posting notices "that San Antonio was . . . in charge of transporting the corpses to the FSI," while not entirely accurate, makes sense given San Antonio's contract with the

Civil No. 11-1595 (JAF) -15-

FSI. (Id. at 9.) Furthermore, Plaintiffs have "failed to adduce evidence of an arbitrary or irrational motive for the" alleged attempts by Movants (police agents) to persuade citizens to use San Antonio's services. Wojcik v. Mass. State Lottery Comm'n, 300 F.3d 92, 104 (1st Cir. 2002) (internal quotation marks and citations omitted). Finally, Plaintiffs have not alleged that Defendants' actions sprung from an impermissible consideration such as bad faith intent to injure Plaintiffs. Barrington Cove, 246 F.3d at 7.

In sum, Plaintiffs have failed to properly allege a factual basis to support a constitutional violation under the Fourth or Fourteenth Amendment. Therefore, qualified immunity shields Movants and Conte in their personal capacity from damages claims.

**C.    Remaining Claims under § 1983**

Next, Movants argue that Plaintiffs fail to state a claim, and we agree. To the extent that a portion of Plaintiffs' § 1983 claim remains unaffected by qualified immunity, we dismiss it. "To state a violation of § 1983, a plaintiff must show that 'the official, acting under color of state law, caused the deprivation of a federal right.'" DiMarco-Zappa, 238 F.3d at 33 (citing § 1983). To overcome a motion to dismiss, a § 1983 plaintiff "must allege (1) the violation of a right protected by the Constitution or laws of the United States and (2) that the perpetrator of the violation was acting under color of law." Cruz-Erazo, 212 F.3d at 621 (citing Pittsley v. Warish, 927 F.2d 3, 6 (1st Cir. 1991)). We discuss the alleged federal violations in turn below, and find that Plaintiffs have failed to properly allege the deprivation of a federal right and, thus, they also fail to state a § 1983 claim under Federal Rule of Civil Procedure 12(b)(6). See Penalbert-Rosa v. Fortuño-Burset, 631 F.3d 592, 595 (1st Cir. 2011) ("It is the conclusory nature of respondent's allegations, rather than their extravagantly fanciful nature, that disentitles them to the presumption of truth.").

### 1. **Fourth and Fourteenth Amendments**

As discussed above in section III.B., Plaintiffs have alleged no invasion of privacy or search and seizure to state a Fourth Amendment claim. Moreover, Plaintiffs' Fourteenth Amendment claims fail. As discussed above, Plaintiffs' failure to identify a protected interest dooms their procedural due process claim, and they can point to no governmental conduct that shocks the conscience to support a substantive due process claim. Moreover, we find that (regardless of whether the actions of private party codefendants San Antonio and Rosario constituted "state action") the alleged actions do not shock the conscience, and cannot sustain a substantive due process claim. Rosario's alleged conduct (interception of police scanners and meddling machinations in local politics) might not be commendable, but it does not shock the conscience. See McConkie v. Nichols, 446 F.3d at 261–62. Finally, their "class of one" equal protection claim fails for failure to allege that the two funeral homes were similarly situated. See supra, Section III.B.

### 2. **Sherman Act**

We agree with Movants that Plaintiffs' factual allegations fail to state an antitrust claim. The Sherman Act prohibits "[e]very contract . . . or conspiracy, in restraint of trade or commerce among the several [s]tates, or with foreign nations." 15 U.S.C. § 1. "[T]o state a claim under this section, Plaintiff is obliged to allege the existence of a contract, combination, or conspiracy that is in restraint of interstate trade or commerce which has resulted in injury to Plaintiff." Gonzalez-Droz v. Gonzalez-Colon, 717 F. Supp. 2d 196, 214 (D.P.R. 2010) (citing Tropical Air Flying Servs., 158 F.Supp.2d at 188–89).

Here, Plaintiffs allege that Defendants "conspired to restrain Ramos' Funeral Home business by notifying San Antonio of all the deceases that are informed [sic] at Isabela

Precinct," in violation of 15 U.S.C. § 1. (Docket No. 53 at 20.) Plaintiffs do not reference any other funeral homes, and the factual allegations revolve exclusively around San Antonio taking business from Noroeste. Essentially, Plaintiffs allege that Defendants have interfered with their contracts, persuaded potential clients to accept San Antonio's services, and that the city and municipal officers favor San Antonio. More importantly, the complaint makes no reference to interstate commerce or the impact of the alleged conduct on interstate commerce.[10]

The Supreme Court has explained that "jurisdiction may not be invoked under [the Sherman Act] unless the relevant aspect of interstate commerce is identified; it is not sufficient merely to rely on identification of a relevant local activity and to presume an interrelationship with some unspecified aspect of interstate commerce. McLain v. Real Estate Bd., 444 U.S. 232, 242 (1980). Plaintiffs have failed to "allege the critical relationship in the pleadings" and, thus, their claim fails. Id.

### 3. 18 U.S.C. 2511

Finally, Plaintiffs' claims under the Federal Wiretap Act, 18 U.S.C. § 2511 fail. Section 2511 is primarily a criminal provision, but § 2520(a) expressly creates a private civil cause of action for "any person whose wire, oral, or electronic communication is intercepted, disclosed, or intentionally used in violation of this chapter." 8 U.S.C.A. § 2520. Unfortunately, Plaintiffs do not allege that Defendants intercepted their communications, but that codefendant "Rosario has installed at the San Antonio premises a scanner that intercepts all the calls received from 911 and Emergencias Medicas." (Docket No. 53 at

---

[10] The only reference to interstate commerce does not create the necessary nexus: In explaining their claim under 18 U.S.C. § 1, Plaintiffs state that codefendant "'Rosario' operated a scanner from Funeraria San Antonio for the transmission of interstate communications affecting interstate commerce." (Docket No. 53 at 21.)

21.) Therefore, the allegations do not state a claim under the terms of the statute. § 2520; see also United States v. Ramos-Gonzalez, Crim. No. 07-0318, 2010 WL 4181674 at *3 (D.P.R. Oct. 25, 2010) (citing Alderman, 394 U.S. at 188) (holding defendant lacked standing to challenge intercepted communication under Wiretap Act because he was not part of recorded conversation).

Thus, without an underlying deprivation of a federal right, the §1983 claim fails.

**D.      42 U.S.C. § 1985**

Movants next argue that Plaintiffs' factual allegations do not state a conspiracy claim under § 1985. Movants are correct. "The First Circuit has held that a claim under § 1985(3) must contain four elements. First, the plaintiff must allege a conspiracy; second, he must allege a conspiratorial purpose to deprive the plaintiff of the equal protection of the laws; third, he must identify an overt act in furtherance of the conspiracy; and finally, he must show either injury to person or property, or a deprivation of a constitutionally protected right." Perez-Sanchez v. Pub. Bldg. Auth., 531 F.3d 104, 107 (1st Cir. 2008). A "claim under § 1985(3) requires 'some racial, or perhaps otherwise class-based, invidiously discriminatory animus behind the conspirators' action.'" Id. (citing Griffin v. Breckenridge, 403 U.S. 88, 102 (1971)). Furthermore, to fall within the scope of § 1985, a class must be "readily recognizable [or] among those traditionally protected by the Civil Rights Act." Bricker v. Crane, 468 F.2d 1228, 1233 (1st Cir. 1972).

Here, Plaintiffs simply allege that "defendants conspired to violate Plaintiffs' rights when they provided San Antonio with all the necessary information to chase and sell almost all the funeral services at the Northwest of Puerto Rico." (Docket No. 53 at 19.) Nothing in the complaint identifies any invidiously discriminatory animus and Plaintiffs identify no

Civil No. 11-1595 (JAF)                                                                              -19-

class that they might fall into. Thus, Plaintiffs have identified no cognizable class for § 1985 purposes and the claim fails. See Aulson v. Blanchard, 83 F.3d 1, 5 (1st Cir. 1996) ("[A] class is cognizable for purposes of § 1985(3)'s class-based animus requirement only when it is comprised of a distinctive and identifiable group.").

**E.     Sherman Act Claim**

As discussed above in Section III.C.2., Plaintiffs fail to state a Sherman Act claim because they have not established the necessary nexus with interstate commerce.

**F.     18 U.S.C. 2511**

Additionally, as we determined in Section III.C.3., supra, Plaintiffs failed to state a claim for interception of oral communications under § 2511.

**G.     Supplemental Commonwealth Claims**

We decline to exercise supplemental jurisdiction over the remaining associated Commonwealth claims, since the jurisdictional basis for maintaining Plaintiffs' Puerto Rico claims has been undermined by dismissal of the federal claims. Rivera v. Murphy, 979 F.2d 259, 264 (1st Cir. 1992). Accordingly, those supplemental Commonwealth claims are dismissed without prejudice pursuant to 28 U.S.C. § 1367(c)(3).

**IV.**

**Conclusion**

Given the foregoing, we hereby **GRANT** Movants and Conte's motions to dismiss. (Docket Nos. 25; 27.) Plaintiffs' federal claims are **DISMISSED WITH PREJUDICE**,

and their supplemental Commonwealth claims are **DISMISSED WITHOUT PREJUDICE**.

**IT IS SO ORDERED.**

San Juan, Puerto Rico, this 27th day of July, 2012.

s/José Antonio Fusté
JOSE ANTONIO FUSTE
United States District Judge